UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN, SOUTHERN DIVISION

PAMELA GROTH, an individual,                    Case No.:2021-

     Plaintiff,

v.                                              Hon.

CF Real Estate Services, LLC, a Georgia LLC
registered and doing business in Michigan,

     Defendant.

_____/

GWINN LEGAL PLLC
Daniel A. Gwinn (P53663)
Laura K. Bradshaw-Tucker (P42652)
Attorneys for Plaintiff
901 Wilshire Drive, Suite 550
Troy, MI  48084
daniel@gwinnlegal.com
laura@gwinnlegal.com
Phone:(248) 247-3300

_____/

**PLAINTIFF PAMELA GROTH'S COMPLAINT**
**AND DEMAND FOR JURY TRIAL**

There is no other pending or resolved civil action arising out of the
transaction or occurrence alleged in the complaint.

Plaintiff PAMELA GROTH, through her attorneys, **GWINN LEGAL**

**PLLC**, files her Complaint and Demand for Jury Trial against the above-named

Defendant and alleges as follows:

**SUMMARY**

This lawsuit involves a request by the Plaintiff, a disabled woman who suffers from multiple sclerosis and now uses a wheelchair and/or a walker, for a reasonable accommodation from the policies and practices of her former landlord, CF Real Estate Services, LLC, as they relate to notice requirements and continued lease payments. Plaintiff's deteriorating condition denied her full use and enjoyment of the leased premises: She could not access the bathtub and shower, nor did she have full use of her wheelchair to access spaces in the apartment, which is not barrier-free or otherwise accessible to a person living with a disability. Because of this lack of access, Ms. Groth was forced to move to a subsidized HUD apartment labeled as "handicapped-accessible" and "barrier-free," as soon as one became available. CF Real Estate Services refused to modify its requirement of 60 days' written notice to Plaintiff's harm and detriment.

## JURISDICTION AND VENUE

1.     Plaintiff Pamela Groth is an individual with a disability who formerly resided in Apartment 6 of the Garden Court Apartments, located at 414 Stewart Road, Monroe, in Monroe County, Michigan.

2.     Defendant CF Real Estate Services, LLC is a foreign limited liability company with offices at 710 Peachtree Street, NE, Suite 100, Atlanta, Georgia. Its resident agent in Michigan is National Registered Agents, Inc., 40600 Ann Arbor Road E., Suite 201, Plymouth, MI 48170.

3.      Defendant CF Real Estate Services LLC owns and operates the Garden Court Apartments, located on Stewart Road in Monroe, Michigan, where Ms. Groth resided until November 7, 2020. Sherry Fitzwater is the manager of the Garden Court Apartments and an agent of Defendant CF Real Estate Services LLC.

4.      This Court has subject matter jurisdiction of the federal claims asserted in this action under 28 U.S.C. § 1331 because the action arises under the laws of the United States, specifically the Fair Housing Act, 42 U.S.C. § 3601, *et seq.*

5.      Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's claims under Michigan common laws relating to promissory estoppel and detrimental reliance, where the claims arise from a common nucleus of related facts and are so related to the federal claims within the original jurisdiction of this Court that they form part of the same case or controversy.

6.      Venue is proper in the Eastern District of Michigan, Southern Division, under 28 U.S.C. § 1391(b)(1) where the events or omissions giving rise to the claim occurred in Monroe, in Monroe County, Michigan, which is within this District.

## FACTUAL BACKGROUND

7.      Plaintiff Pamela Groth incorporates by reference and realleges all the preceding allegations.

8.      Ms. Groth moved into Apartment 6 of the Garden Court Apartments in Monroe, Michigan, in 2017.

3

9.     The apartment was not barrier-free. The unit was not accessible to a person with a disability.

10.     When she first moved in, Ms. Groth, who suffers from MS, was able to navigate the apartment without much difficulty and was able to use the bathtub and shower without putting herself at risk.

11.     As her condition deteriorated, Ms. Groth was no longer able to access the bathtub and shower, and was forced use the kitchen sink to wash up. Her wheelchair was too large for the small apartment; it took her 10 minutes to get from the kitchen to the bathroom. She had difficulty maneuvering her wheelchair on the sidewalks of the complex because they were too narrow.

12.     Sometime in 2019, Ms. Groth applied for an accessible, subsidized apartment at Samaritas Affordable Living of Monroe, which provides apartments for senior citizens and others. She was placed on a waiting list.

13.     On or about January 8, 2020, Ms. Groth's lease for the unit at the Garden Court Apartments was expiring, but she was still on the waiting list for an accessible apartment with Samaritas.

14.     On January 8, 2020, Ms. Groth spoke with Fitzwater, who manages the Garden Court Apartments for Defendant CF Real Estate, to determine what her options would be if she renewed her lease, but an accessible apartment through Samaritas later became available during the course of said lease. The conversation

occurred in Ms. Groth's apartment that day. Ms. Groth had the unsigned lease with her during their face-to-face discussion.

15.     Fitzwater assured Ms. Groth during their January 8, 2020 discussion that she would be allowed to end her lease early "without penalties," if she had to move due to her disability.

16.     Based on this representation, Ms. Groth signed the lease and gave the signed copy to Fitzwater immediately after the January 8, 2020, discussion, before Fitzwater left Ms. Groth's apartment that day.

17.     In September 2020, Samaritas notified Ms. Groth that an accessible apartment would soon become available.

18.     Unable to risk losing out on the apartment and being forced to spend additional months or years without access to a shower and bath, Ms. Groth signed a lease with Samaritas.

19.     On October 13, 2020, she wrote CF Real Estate to inform them that, due to her disability, she would be vacating her apartment by November 7 to move into a subsidized apartment.

20.     She moved out on November 7, 2020.

21.     At the time she moved out, the apartment — Unit 6 — was clean and in excellent repair.

22.     Ms. Groth removed an access ramp from the apartment on or about November 19, 2020 and returned the key to the apartment that same day.

23.     Defendant CF Real Estate took possession of the unit on November 19, 2020 — almost two weeks after the apartment was vacated and more than five weeks after notice was given.

24.     CF Real Estate allegedly allows tenants to terminate a lease early, without being subject to a $1,382.00 re-letting charge, if they have become eligible to "take possession of a subsidized rental unit in senior citizen housing" or have "become incapable of living independently," but only if 60 days' notice is provided. This requirement of 60 days' notice was not communicated to Plaintiff.

25.     Because Ms. Groth had failed to provide the requisite 60 days' notice, Defendant CF Real Estate charged her the full rent for November, and pro-rated rent for December (through December 13, the end of the 60-day notice period).

26.     Defendant stated it would retain $289.77 of Ms. Groth's $300 security deposit to cover the pro-rated December rent.

27.     Ms. Groth was distressed by the charges, which she had not anticipated, because she had been assured she would not be penalized for terminating her lease early.

28.     The unexpected charges caused Ms. Groth significant hardship.

29.     Ms. Groth receives $1,554.20 per month in social security disability.

30.     In addition to Defendant CF Real Estate's charges for the November rent and the pro-rated December rent, Ms. Groth had to pay her new landlord a security deposit and had to pay rent at Samaritas for November and December.

31.     Alarmed by the unanticipated charges, Ms. Groth contacted the Fair Housing Center of Southeast Michigan ("Fair Housing Center") around November 10, 2020.

32.     On November 24, 2020, Niki Green, an investigator at the Fair Housing Center, wrote to Fitzwater, requesting reimbursement of the $691 paid for the November rent and return of the full $300 security deposit, without any deductions for pro-rated December rent, as an accommodation under the Fair Housing Act, 42 USC 3604(f)(3)(B).

33.     Included with the November 24, 2020 letter from the Fair Housing Center was a letter from Ms. Groth's physician, Dr. Maysa Hamade, who verified that Ms. Groth suffers from multiple sclerosis and "requires a barrier-free handicap-accessible living arrangement."

34.     In a November 30, 2020 letter, Defendant CF Real Estate, through its agent Carie Wagner, the Regional Property Manager, stated that Defendant CF Real Estate requires 60 days' notice, which Ms. Groth had failed to provide. Ms. Groth was therefore responsible for payment of rent for the 60-day period, including all of November and the pro-rated rent through December 13, 2020, the expiration of the

notice period. Wagner also advised Ms. Groth that Defendant had found a tenant for the apartment, so the pro-rated rent for December would be reduced to $44.58 — two days' rent. Defendant would refund Ms. Groth $255.42, the balance of her security deposit after payment of the pro-rated rent.

35.    On information and belief, Ms. Groth has received $255.42 as a refund of her $300 security deposit, less the charge for two days' rent in December. She has not cashed the check as the amount due her is disputed.

36.    The Fair Housing Center responded on Ms. Groth's behalf in a letter dated December 3, 2020. In this letter, the Fair Housing Center reminded Defendant CF Real Estate that a "reasonable accommodation" under the FHA can be a waiver to a rule, policy, practice or service. The Fair Housing Center asked that Defendant CF Real Estate "waive the early termination fees against Ms. Groth" and reimburse Ms. Groth $254 of the November rent[1], waive any rent for December, prorated or not, and return the entire $300 security deposit.

37.    In the December 3, 2020 letter, Green, the Fair Housing Center investigator, also noted, as set out in paragraphs 15 and 16 of this Complaint, that Ms. Groth reported she had been informed in conversation with Fitzwater on about

---

[1] Although not clearly stated in the Fair Housing Center letter, $254 represents a prorated share of the monthly $691 rent, for the period from November 19, 2020 through November 30, 2020, the period during which Defendant CF Real Estate had possession of the premises.

January 8, 2020 that "Garden Court would 'let her go 'without penalties' if she had to move out due to her [living with] Multiple Sclerosis."

38.     Defendant CF Real Estate, through its agent, Wagner, denied that Fitzwater had advised Ms. Groth that Garden Court had promised anything more than that she would not be charged the re-letting fee, as stated in the lease. Wagner stated a check for the $255.42 remaining in the security deposit after payment of two-days December rent, prorated, had been issued. She concluded, "it is unclear to us how this request would qualify as a reasonable accommodation or how refunding rent owed under the lease wouldn't qualify as creating a financial burden for the property."

39.     Upon information and belief, there was no further correspondence between the representatives of the Fair Housing Center and of Defendant CF Real Estate, or between Defendant CF Real Estate and Plaintiff.

**COUNT I**
**VIOLATION OF THE FAIR HOUSING ACT**
**FAILURE TO ACCOMMODATE AGAINST DEFENDANT CF REAL**
**ESTATE**

40.     Plaintiff Pamela Groth incorporates by reference and realleges all the preceding allegations.

41.     The Fair Housing Act (FHA), 42 U.S.C. § 3604(f), makes it unlawful to discriminate against any person "in the provision of services or facilities in connection with [rental of a dwelling], because of a handicap."

42.    Discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B).

43.    An accommodation in policies, practices and services can include permitting early termination of a lease, without assessment of fees, where refusal to allow this reasonable accommodation to a person living with a disability[2] would interfere "with that individual's opportunity to 'use and enjoy' a dwelling." *Samuelson v. Mid-Atlantic Realty Co., Inc.,* 947 F.Supp. 756, 759-760 (D. Delaware, 1996).

44.    A refusal to accommodate claim under the FHA is established where the Plaintiff shows that (1) she suffers from a disability as defined in 42 U.S.C. § 3602(h), (2) that the defendant knew or should reasonably be expected to know of the disability, (3) that accommodation of the disability may be necessary to afford the plaintiff an equal opportunity to use and enjoy a dwelling, (4) that the accommodation was reasonable, and (5) that the defendant refused to make the accommodation. 42 U.S.C. § 3604(f)(3)(B); *DuBois v. Ass'n of Apartment Owners*

---

[2] The Fair Housing Act refers to "handicapped individuals" and "handicap." Due to the focus on the disability rather than the individual and the problematic origins of the term "handicap" – it referred to beggars, who sought a handout, "cap in hand" – the terms "person living with a disability," disability," or "disabled" are now preferred and such terms will be used, as appropriate, in this Complaint.

*of 2987 Kalakaua*, 453 F.3d 1175, 1179 (9th Cir. 2006), *cert. denied*, 549 U.S. 1216 (2007); *Astralis Condominium Ass'n v. Sec'y, U.S. Dept. of Housing & Urban Development*, 620 F.3d 62, 67 (1st Cir. 2010).

45.    Ms. Groth, who must use a wheelchair, is indisputably a person living with a disability. Additional support for this finding is provided by the note from her physician. Defendant CF Real Estate, through its agent Fitzwater, was advised of the disability at least as early as January 2020. Ms. Groth had further advised Defendant, through Fitzwater, that as a result of her disability, she was unable to enjoy use of the apartment she had rented at Garden Court apartments — because she could not access the bathtub and shower, or easily navigate the apartment in her wheelchair. She also advised that the accommodation would be necessary so that she could secure an apartment that would allow an equal opportunity to use and enjoy a dwelling. The accommodation she requested, through the Fair Housing Center, was that the 60-day notice period be waived. As an accommodation, Plaintiff should not have been charged rent after Defendant took possession of the apartment on November 19, 2020. The amount involved is — for Defendant — minimal: $297.94.[3] Defendant CF Real Estate has refused to make this accommodation.

---

[3] This figure includes a rebate of $253.36 for 11 days rent, from November 19, 2020, the day Defendant took possession of the apartment, to November 30, and a return of the $44.58 withheld from Ms. Groth's security deposit as payment of two days' rent in December.

46.     Plaintiff has established a *prima facie* case under the FHA. Her right to a reasonable accommodation in the form of an exception to policies or regulations has been violated.

47.     Plaintiff Pamela Groth therefore asks this Honorable Court to enter a judgment in favor of Plaintiff and require Defendant to refund Ms. Groth a total of $297.94, for the pro-rated rent charged her from the time Defendant regained possession of the apartment on November 19, 2020 to the time the apartment was leased to a new tenant on December 3, 2020, together with an award for non-economic damages, costs, interest and attorneys' fees to the extent allowed by law and as the Court may find just and proper.

## COUNT II
### UNDER THE COMMON LAW DOCTRINE OF PROMISSORY ESTOPPLE, DEFENDANT, THROUGH ITS AGENT, IS BOUND BY ITS PROMISE THAT PLAINTIFF WOULD NOT BE PENALIZED FOR EARLY TERMINATION OF HER LEASE WHERE THE PROMISE WAS MADE UNDER CIRCUMSTANCES INDICATING IT WAS DESIGNED TO INDUCE ACTION, WHERE PLAINTIFF ACTED IN RELIANCE ON THE PROMISE, AND WHERE PLAINTIFF HAS BEENINJURED BY HER REASONABLE RELIANCE ON DEFENDANT'S PROMISE.

48.     Plaintiff Pamela Groth incorporates by reference and realleges all the preceding allegations.

49.     In January 2020, Plaintiff had to decide whether to renew her lease on the apartment in the Garden Court Apartments. At that time, she was on the waiting list for an accessible, subsidized, apartment. She worried that if she signed a lease

with Defendant CF Real Estate, she would be stuck paying for two apartments if a subsidized accessible unit became available. She knew she could not afford to do so.

50.     Plaintiff discussed her concerns in person with Defendant's agent, Fitzwater, who advised her that she would not be subject to any penalty if she had to terminate her lease early. Fitzwater, who met with Ms. Groth at the apartment, understood that Ms. Groth was unable to enjoy full use of her apartment because it was not accessible to a person living with a disability.

51.     Based on Fitzwater's representation, Ms. Groth signed a renewal of her lease before Fitzwater left her apartment after their January 8, 2020, discussion.

52.     It is a long-established principal of common law that an estoppel arises "when one by his acts, representations, or admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts." *Kole v. Lampen,* 191 Mich. 156, 157-158; 157 N.W. 392 (1916).

53.     To establish a claim of promissory estoppel, a Plaintiff must show "(1) a promise (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee and (3) that, in fact, produced reliance or forbearance of that nature (4) in circumstances requiring

enforcement of the promise if injustice is to be avoided. *Zaremba Equip., Inc. v. Harco Nat'l Ins. Co.,* 280 Mich. App. 16, 41; 761 N.W.2d 151 (2008).

54.    A promise under promissory estoppel is "a manifestation of intention to act ... in a specified way, so made as to justify a promisee in understanding that a commitment has been made." *First Sec. Sav. Bank v. Aitken*, 226 Mich. App 291; 573 NW2d 307 (1997)(overruled on other grounds by *Smith v. Globe Life Insurance Co.,* 460 Mich 446*; 597 NW2d 28 (1998)). The promise must be clear and definite. *Id. a*t 316.

55.    Here, the first element of promissory estoppel has been satisfied. In a face-to-face meeting about renewal of her lease, Ms. Groth informed Defendant's agent, Fitzwater, the she was on a waiting list for an accessible apartment and was concerned that if she renewed her lease with Defendant, she would be penalized if she had to terminate early. Fitzwater assured Ms. Groth, in this context, that she would not be subject to penalties.

56.    The second element of promissory estoppel, that the promisor should reasonably have expected the promise to induce action of a definite and substantial character on the part of the promisee, has also been met. As noted, the promise was made during a discussion regarding whether Ms. Groth would renew her lease with Defendant. The promise was made in response to Ms. Groth's concern that she would be subject to penalties if she terminated her lease with Defendant early. In

this context, any reasonable person would have expected the promise that Ms. Groth would not be penalized for early-termination of the lease to induce her to the definite and substantial action of renewing the lease.

57.    Fitzwater's promise also met the third element of promissory estoppel: that the promise actually induced reliance or forbearance. It is not contested that Ms. Groth signed the lease after having voiced her concerns that she would be subject to penalties if she later had to terminate her lease early.

58.    The last element of promissory estoppel, that the promise must been enforced in order to avoid injustice, Ms. Groth, in reliance on the promise made by Fitzwater signed the lease and consequently has been held to a 60 days' notice requirement she had reasonably believed did not apply, and is out of pocket almost $300, almost a third of her monthly income. Injustice can only be avoided if Ms. Groth is given the rental arrangement to which she believed she agreed.

59.    Plaintiff Pamela Groth therefore asks this Court to enforce the terms of the lease as promised by Defendant's agent Fitzwater, and order Defendant to refund to Ms. Groth $297.94, the rent received and retained by Defendant for the period after Plaintiff had turned over the keys to the apartment.

## PRAYER FOR RELIEF

WHEREFORE, for the reasons stated in this Complaint, Plaintiff Pamela Groth asks this Honorable Court to enter a judgment in favor of Plaintiff and against

Defendant and order Defendant to refund Ms. Groth $297.94 for the pro-rated rent charged her from the time Defendant took possession of the apartment on November 19, 2020 through December 3, 2020, together with an award for non-economic damages, costs, interest and attorneys' fees to the extent allowed by law and as the Court may find just and proper.

Respectfully submitted,

**GWINN LEGAL PLLC**

*/s/Daniel A. Gwinn*
_____
Daniel A. Gwinn (P53663)
Laura Bradshaw-Tucker (P42652)
Attorneys for Plaintiff
901 Wilshire Drive, Ste. 550
Troy, MI 48084
(248) 247-3300
daniel@gwinnlegal.com
laura@gwinnlegal.com

Dated:  February 1, 2021

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN, SOUTHERN DIVISION

PAMELA GROTH, an individual,                    Case No.:2021-

     Plaintiff,

v.                                                               Hon.

CF Real Estate Services, LLC, a Georgia LLC
registered and doing business in Michigan,


     Defendant.
_____/
GWINN LEGAL PLLC
Daniel A. Gwinn (P53663)
Laura K. Bradshaw-Tucker (P42652)
Attorneys for Plaintiff
901 Wilshire Drive, Suite 550
Troy, MI  48084
daniel@gwinnlegal.com
laura@gwinnlegal.com
Phone:(248) 247-3300
_____/

## PLAINTIFF PAMELA GROTH'S
## DEMAND FOR JURY TRIAL

     Plaintiff Pamela Groth, through her attorneys, Daniel A. Gwinn and Laura

Bradshaw-Tucker of GWINN LEGAL PLLC, demands a jury trial in the above-

captioned matter.

                         Respectfully submitted,

                         **GWINN LEGAL PLLC**

*/s/Daniel A. Gwinn*

_____

Daniel A. Gwinn (P53663)
Laura Bradshaw-Tucker (P42652)
Attorneys for Plaintiff
901 Wilshire Drive, Ste. 550
Troy, MI 48084
(248) 247-3300
daniel@gwinnlegal.com
laura@gwinnlegal.com

Dated: February 1, 2021